THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: August 3, 2018



Brett H. Ludwig
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:                                              Case Number 17-27843−bhl

CYNTHIA L BERNHARD,                                 Chapter 13

        Debtor.

**DECISION AND ORDER REGARDING DEBTOR'S OBJECTION TO
TRUSTEE'S and CREDITOR SCOTT BERNHARD'S MOTIONS TO DISMISS**

## INTRODUCTION

This case concerns the eligibility of Cynthia Bernhard to be a chapter 13 debtor. Under 11 U.S.C. §109(e), relief under chapter 13 is only available to individuals with regular income who owe, on the petition date, "noncontingent, liquidated, unsecured" debts of less than $394,725. According to the debtor's amended schedules, she had noncontingent, liquidated, unsecured debts of only $273,391.93 as of the petition date. If her amended schedules are accurate, she is eligible to be a chapter 13 debtor. But the chapter 13 trustee and the debtor's ex-husband, Scott Bernhard, challenge her classification of certain debts, contending: (1) a debt she scheduled as secured should be treated as unsecured and (2) a debt she scheduled as "unliquidated" should be treated as liquidated and counted toward the debt limits. If the trustee and ex-husband are correct, and these debts are counted as noncontingent, liquidated unsecured debts, then the debtor is not eligible for chapter 13.

Based on these contentions, the trustee and Scott Bernhard filed motions to dismiss. At a February 13, 2018 preliminary hearing on those motions, the parties agreed the material facts

were undisputed and that the eligibility issue was a legal one. Accordingly, the court set briefing deadlines and scheduled oral argument for April 17, 2018. After oral argument, the court allowed the parties the chance to file supplemental briefs and took the issue under advisement. This decision and order constitutes the court's findings (based on undisputed matters of record) and conclusions of law on the motions to dismiss.

## BACKGROUND

On August 9, 2017, the debtor filed a chapter 13 petition, along with supporting schedules and a proposed plan. In her initial schedules, the debtor disclosed total liabilities of $664,537.60, including $301,900.00 in secured debts and $362,637.60 in unsecured debts. The originally scheduled unsecured debts were:

| Internal Revenue Service | 3,000.00 |
|---|---|
| WI Dept. of Revenue | 0.00 |
| Alliant Credit Union | 10,725.00 |
| Barclays Bank Delaware | 6,181.00 |
| Bruce Taylor/Mayville Center | 90,000.00 |
| Capital One Bank | 18,266.00 |
| Epicore | Unknown |
| Great America Financial Services | Unknown |
| Nelnet [student loan] | 2,401.00 |
| Nelnet [student loan] | 8.303.00 |
| Stearns Bank | 201,138.60 |
| TD Bank USA/Target Credit | 5,517.00 |
| US Bank | 17,106.00 |
| Total | $362,637.60 |

Included in these unsecured debts was a $90,000 unsecured debt to Bruce Taylor and the Mayville Center Limited Partnership (the "Mayville Center Debt"). The debtor did not initially identify this debt as either contingent or unliquidated. Elsewhere in her schedules, the debtor identified a $50,000 *secured* debt owed to her ex-husband, Scott Bernhard.

On November 16, 2017, the debtor filed an amended list of unsecured creditors. The amendments added small values ($754.33 and $0.00) to two unsecured debts that she had previously listed as having "unknown" amounts. More significantly, the debtor also changed her classification of the Mayville Center debt to "unliquidated" and "disputed" with the result that that $90,000.00 debt would, at least in theory, no longer count toward the unsecured debt limit.

On January 3, 2018, the chapter 13 trustee filed a motion to dismiss the case, contending that the debtor was not eligible to be a chapter 13 debtor because her noncontingent, liquidated unsecured debts exceeded the debt limits in 11 U.S.C. §109(e). A week later, on January 10, 2018, creditor Scott Bernhard, the debtor's former spouse, also filed a motion to dismiss based on the same grounds. The debtor opposed both motions.

## LEGAL ANALYSIS

In 11 U.S.C. §109, entitled "Who may be a debtor," Congress enacted eligibility qualifications for debtors under the various chapters of the Bankruptcy Code. Section 109(e) restricts eligibility for relief under chapter 13 to individuals with debts below certain prescribed limits. Adjusted for inflation[1], section 109(e) provides that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200 … may be a debtor under chapter 13 of this title." A "debt" is a "liability on a claim." 11 U.S.C. §101(12). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A). The Bankruptcy Code does not define the terms "liquidated" or "disputed."

Scott Bernhard contends the debtor's unsecured debts exceed the debt limits, making her ineligible for Chapter 13.[2] He challenges the debtor's characterization of two claims, which, he contends, if properly counted, place the debtor over the debt limits.

### 1. Characterizing the Scott Bernhard Debt

Scott Bernhard first argues that the debtor has mischaracterized the debt she owes to him, a debt that she scheduled as a $50,000 secured debt. The parties agree that this claim is based on a docketed state court judgment. Citing *Rumage v. Gullberg,* 2000 WI 53, 235 Wis.2d 279, 611 N.W.2d 458, Scott Bernhard maintains that his claim must be treated as unsecured. Because the debtor has no non-exempt equity against which a lien could attach, he insists that his filed claim

---

[1] 11 U.S.C. §104 provides for the adjustment of the dollar amounts in §109(e) every three years. The limits for Bernhard's debts are those that were in effect on August 9, 2017, when she filed her petition.

[2] At the April 17, 2018 hearing on oral argument, the trustee stated he concurred with the arguments raised by Scott Bernhard. The trustee has not otherwise submitted a brief or written argument beyond his initial motion to dismiss.

in the amount of $50,913.61 remains unsecured even though it is based on a docketed judgment. It is not often that a creditor insists that its claim be treated as unsecured rather than secured.

At oral argument and in her reply brief in opposition to the motions to dismiss, the debtor conceded the correctness of Scott Bernhard's analysis. Her counsel agreed that as of the petition date this debt should be treated as unsecured. Accordingly, for purposes of the debt limits under section 109(e), the court will treat this debt as unsecured.

## 2. Characterizing the Mayville Center Debt

Scott Bernhard also challenges the debtor's attempt to change her characterization of the Mayville Center Debt. He points out that in her initial schedules, the debtor did not contend that this debt was unliquidated. He also cites Mayville Center's $160,958.35 proof of claim, which, he maintains, is prima facie evidence of the validity and amount of the debt. If the debtor owed Mayville Center $160,958.35 on the petition date and the debt is treated as liquidated, she plainly is not eligible to be a chapter 13 debtor. Moreover, even if the debt is only $90,000, as the debtor scheduled it, but is treated as liquidated, she is also not eligible to be a chapter 13 debtor.

The debtor insists that the Mayville Center Debt is unliquidated and should not count toward the section 109(e) debt limits. She explains that this debt arises from her personal guarantee of a commercial lease for a failed hardware store, previously operated by a company she owned. At the time the debtor filed her chapter 13 petition, a state court action against her on the lease had already begun, but a judgment had not been entered. She does not dispute having personally guaranteed the lease obligations, but contends the debt is not readily calculable and is thus unliquidated. She scheduled the debt at $90,000, but insists that the final amount remains up in the air for several reasons, including the claimant's failure to mitigate damages, the timing of the breach of contract, the amount of the default, and the parties' modification of the contract.

### a. Basis for Eligibility Determination

Section 109(e) expressly requires determination of the debts owed "on the date of the filing of the petition." Post-petition events such as reduction of claims do not affect determination of eligibility. *See In re Hansen*, 316 B.R. 505, 509 (Bankr. N.D. Ill. 2004)

(finding chapter 7 debtor, whose schedules showed he had noncontingent, liquidated, unsecured debt over chapter 13 debt limit on petition date, was not eligible to convert to chapter 13, even though much of debt was forgiven or reduced post-petition). As one bankruptcy court explained:

> If [post-petition] events determined eligibility for chapter 13, a debtor with claims exceeding the limits of chapter 13 could file a petition and hope to qualify if some creditors failed to file proofs of claim, notwithstanding the claims listed in schedules. The plain language of section 109(e) does not permit debtors to employ this strategy. Likewise, a debtor may not intentionally gerrymander either the schedules or the treatment of claims in a chapter 13 plan to qualify for chapter 13. As long as a debtor's schedules are completed after the exercise of a reasonable level of diligence and are filed in good faith, the schedules will determine a debtor's eligibility for chapter 13.

*In re Smith*, 325 B.R. 498, 502 (Bankr. D. N.H. 2005). So, while the starting point of the analysis is the debtors' schedules, a bankruptcy court may also look beyond the schedules to other evidence when a good faith objection to the debtor's eligibility under section 109(e) is raised. *In re Williams Land Co.*, 91 B.R. 923, 927 (Bankr. D. Or. 1988); *see also In re De La Hoz*, 451 B.R. 192, 201-02 (Bankr. M.D. Fla. 2011) (fact that debtors had characterized virtually all their debt as either contingent or unliquidated and thereby evaded applicable debt ceilings permitted court to look beyond debtors' schedules to determine whether certain debts were, in fact, contingent or unliquidated).

Scott Bernhard argues that the debtor's eligibility must be determined based on the proofs of claim on file. In conjunction with this argument, he offers a spreadsheet that totals those proofs of claim, including the proof of claim for the Mayville Center Debt. The spreadsheet shows unsecured debts of $496,863.15, including two unfiled but scheduled debts of the Internal Revenue Service and U.S. Bank. Thus, if eligibility under section 109(e)'s debt limits depends on the filed proofs of claim, the debtor is not eligible for chapter 13.

This argument fails, however, because the debtor disputes the amounts in at least some of those proofs of claim, including the Mayville Center proof of claim in particular. In these circumstances, deferring to a spreadsheet totaling proof of claim forms, as well as scheduled debts for which no claims have been filed – without consideration of whether or not those claims were unliquidated or disputed – would be inappropriate. Section 109(e) limits chapter 13 eligibility to individuals that "owe" debts of less than the prescribed amounts as of the petition date; the statute does not require the court to defer to amounts demanded by creditors in proof of

claim forms, particularly where those proof of claim forms are disputed. *See In re Robinson*, 535 B.R. 437, 448-49 (Bankr. N.D. Ga. 2015).

At the same time, and for similar reasons, the court also cannot simply defer to the debtor's schedules. That the debtor characterizes a debt in a particular way, or chooses not to schedule it, is not binding on the court. Indeed, the debtor has already acknowledged that Scott Bernhard's claim is more appropriately scheduled as unsecured. Likewise, in analyzing the debtor's eligibility, the court is not required to accept the debtor's characterization of the Mayville Center debt. Blind deference to either proofs of claim or the debtor's schedules would invite manipulation, either for or against eligibility. As the *Robinson* court explained:

> "A debtor who does not owe an alleged debt that would otherwise render him ineligible should not be denied the right to proceed in chapter 13 merely because an adverse party asserts a claim." Otherwise, a creditor that wants to prevent a party from being a chapter 13 debtor, for example because its debt would be dischargeable in a chapter 13 but not the other chapters, could inflate its numbers in order [to] keep a debtor out of chapter 13, even though those numbers are strongly contested. That a debtor would be denied the benefits of chapter 13 in such a scenario is wholly inequitable. The contrary is also true: it would be inequitable to give a debtor the benefits of chapter 13 relief merely because she disputes a claim. Under these facts, [the debtor] should be given an opportunity to litigate the issue of whether she does not owe all or a portion of that debt.

*Id*. at 449 (citations omitted). Thus, determining the amount of the debtor's liquidated, non-contingent unsecured debts necessitates finding facts related to the nature and amount of those debts as of the petition date.

Here, the debtor does not dispute that she has liquidated, non-contingent unsecured debts of at least $315,798.80. The debtor contends, however, that the Mayville Center Debt is unliquidated and does not count toward the debt limit. If she is correct, then she is eligible. If she is wrong, she is not eligible.

### b. Is the Mayville Center Debt Liquidated?

The debtor maintains the Mayville Center Debt is not liquidated because she has several affirmative defenses[3] to it. Scott Bernhard insists, however, that the existence of potential affirmative defenses does not make the claim unliquidated. Under Seventh Circuit law, a debt is liquidated if it is readily determinable by reference to an agreement or statute. *See In re Knight*, 55 F.3d 231 (7th Cir. 1995) (concluding amount of debt was easily calculated by reference to demand letter and by application of state statute). As stated in *Knight*:

> The fact that Mr. Knight contests this claim does not remove it as a claim under § 109(e) or render it unliquidated. *In re Jordan*, 166 B.R. 201, 202 (Bankr. D. Me. 1994) ("[T]he vast majority of courts have held that the existence of a dispute over either the underlying liability or the amount of a debt does not automatically render the debt either contingent or unliquidated."). More fundamentally, the cases uniformly provide the method for determining whether a debt is liquidated: "If the amount of a claim has been ascertained or can readily be calculated, it is liquidated – whether contested or not." Norton, *supra*, § 18:12 at 18-48. *See In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) ("[T]he question whether a debt is liquidated turns on whether it is subject to 'ready determination and precision in computation of the amount due.' ") (citations omitted).

55 F.3d at 235. Although the Seventh Circuit did not provide further explanation regarding what constitutes a debt "subject to 'ready determination and precision in computation of the amount due,'" the cases favorably cited in the court's footnote provide further guidance.

The Seventh Circuit cited the case of *In re McGovern*, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989), which determined that "[a] claim is often characterized as liquidated if the amount due can be readily ascertained either by reference to an agreement or through simple mathematics." The Seventh Circuit also cited *In re Pulliam*, 90 B.R. 241 (Bankr. N.D. Tex. 1988), which found the following:

> "Liquidation ... refers to certainty as to the money value of the [debt]." *Albano*, 55 B.R. at 367. It is the character of the debt and not of any defense that determines whether a debt is liquidated. The existence of a dispute over part or all of a debt does not convert the debt from a liquidated one to an unliquidated one. C. McCormick, *Damages* § 54 (1935).

90 B.R. at 246.

---

[3] The debtor argues the claim is not readily calculable for several reasons, including the claimant's failure to mitigate damages, the timing of the breach of contract, the amount of the default, and the parties' modification of the contract.

Here, the debtor is a guarantor of a lease between her shuttered business and Mayville Center, and the debt is governed by written agreements, i.e., the lease, the addendum to lease agreement, and the guaranty. The lease includes detailed provisions defining the amount of monthly rent and other charges. According to the proof of claim filed on October 25, 2017, as of the petition date, the $160,958.35 unsecured claim is comprised of (a) $153,239.36 in rent from May 2014 until July 2017, common area charges from May 2014 until July 2017, insurance premiums from May 2014 until July 2017, and real estate taxes from 2014 through 2016; (b) $1,080 in prorated rent from August 1, 2017 until the petition date; (c) $50.17 in prorated common area charges from August 1, 2017 until the petition date; and (d) $6,588.82 in prorated 2017 real estate taxes from January 2017 until the petition date. While the amount of the debt is disputed, the lease allows the amount to be calculated with precision, and the debtor has acknowledged signing the guaranty.

Adding the amount from the proof of claim to the debtor's admitted noncontingent, liquidated unsecured debts of $315,798.80 results in unsecured debts of $476,757.15, far over the chapter 13 debt limits. Based on the records on file, the amount in the creditor's proof of claim appears to be the correct amount of the debtor's noncontingent liquidated unsecured debt to it as of the petition date. For the avoidance of doubt, however, even if the court used the value the debtor assigned to this debt in her original or amended schedules ($90,000), her noncontingent, liquidated unsecured debts would total $405,798.80 and she would still be ineligible.

In sum, because the record shows that the amount due on this debt is readily ascertained by reference to an agreement and through simple mathematics, it is a liquidated debt. Accordingly, the court will treat the claim as unsecured for purposes of the debt limits under section 109(e).

For the reasons stated above, IT IS ORDERED that the Chapter 13 Trustee's and Scott Bernard's Motions to Dismiss are Granted. The dismissal of the case is stayed 30 days to provide the debtor an opportunity to convert her case to chapter 7 or chapter 11.

# # # # #